```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
OMAR WILLIAMS,

                Petitioner,              MEMORANDUM & ORDER
                                         05-CV-4242 (JS)
        -against-

R. ERCOLE, Superintendent,
Clinton Correctional Facility,

                Respondent.
----------------------------------X
APPEARANCES
For Petitioner:     Omar Williams, Pro Se
                    # 00-A-4077
                    Greenhaven Correctional Facility
                    PO Box 4000
                    Stormville, NY 12582

For Respondent:     Rosalind C. Gray, Esq.
                    Suffolk County District Attorney's Office
                    Criminal Courts Building
                    200 Center Drive
                    Riverhead, NY 11901
```

SEYBERT, District Judge:

## INTRODUCTION

Petitioner Omar Williams ("Williams" or "Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons below, Williams' petition for a writ of habeas corpus is DENIED.

## BACKGROUND

On March 26, 1999, Petitioner ("Petitioner"), arrived at an office building, located at 175 Broad Hollow Road in Melville, where the victim, Chanisha Winfield ("Winfield"), worked. Petitioner and Winfield had previously been in a relationship, and had a son together, Omar Williams Jr. However, after multiple

arguments and allegations by Ms. Winfield that Petitioner abused Melisha, her daughter from a previous relationship, Ms. Winfield packed her and her children and left Petitioner.

On that day, Petitioner approached Ms. Winfield in the lobby of her workplace and scorned her for preventing Petitioner from seeing their son. Petitioner told Ms. Winfield that he was there to kill her and that he would make a scene if she did not go outside with him; Petitioner harassed Ms. Winfield until she conceded and went outside with him. At some point during this argument, Petitioner pulled a necklace off of Ms. Winfield's neck that Petitioner had previously given to Ms. Winfield as a gift.

Once outside, Petitioner ordered Ms. Winfield to get into Petitioner's car, and without her consent turned the car on and drove away. As she tried to get out of the car, Petitioner hit Ms. Winfield in the face and continued driving recklessly. During the car ride, Petitioner told Ms. Winfield again that he was going to kill her and himself, but first would have to kill the victim's mother and her sister because Petitioner did not want them to raise the children.

Petitioner then took Ms. Winfield to a park, and forced her to exit the car. There, he pulled her hair, screamed at her, and once again told her that he was going to kill her. Petitioner subsequently ordered Ms. Winfield to get back into the car. Once back in the car, Petitioner handcuffed Ms. Winfield's left arm to

the steering wheel and attempted to drive out of the park. At some point, Petitioner unsuccessfully attempted to rig the gas pedal of the vehicle with a hanger. Because the victim was handcuffed to the steering wheel, it made it difficult for Petitioner to maneuver the vehicle; this angered Petitioner and caused him to hit Ms. Winfield repeatedly.

Petitioner removed the handcuffs off of Ms. Winfield and drove to a park located in Amityville, New York. At the park, Petitioner again ordered Ms. Winfield out of the car. Petitioner told her that they were supposed to get married. Petitioner calmed down, and the parties again entered the vehicle. At this point, Petitioner started yelling once more, and told Ms. Winfield that he did not care about her or the baby. Petitioner then reached into the back seat of his car and took out a bag that contained a needle and a bottle of clear liquid. Petitioner stated to Ms. Winfield that he could stick her with it and that she would have convulsions, or that he could shoot her instead. Consequently, Ms. Winfield began crying and telling him to stop, crying out that they could get counseling. Petitioner consented, and agreed that he would get counseling. Petitioner calmed down, and told Ms. Winfield that they would then go to the daycare center to pick up the children.

When they got to the day care center, Ms. Winfield noticed that the light was on in the police substation, which

indicated to her that police officers were present. When Petitioner went inside to attempt to pick up the children, Ms. Winfield got out of the car and ran over to the substation to explain to the police what happened.

After speaking with Ms. Winfield, Officer Angel Chevalier and his partner, Officer Steven Tracy, approached Petitioner's car and saw handcuffs, binoculars, and a "clearly visible" handgun in a black bag (Tr. 708-715). After Petitioner was apprehended, detectives also discovered a hypodermic needle, a vial of solution, tape, a roll of twine, and ankle restraints.

The officers found Petitioner hiding behind a house across from the daycare center, and brought him into custody. At that time, Petitioner explained to the Detective that Ms. Winfield prevented him from seeing his son, and that he might have slapped Ms. Winfield, but he had taken her to the substation to address the situation. During questioning, Petitioner attempted to explain why the materials in his car were in his possession. Petitioner maintained that he used the needle, vial of solution, and leg restraints in his car to care for his ailing father, but did not explain why Petitioner had the medical supplies in his car.

After the incident with Petitioner, Ms. Winfield sought medical treatment at Brunswick Hospital. Ms. Winfield had bruises under her eye and to the right of her face, as well as a split lip and torn hair from her scalp. Ms. Winfield's medical records were

4

introduced into evidence during the trial.

Petitioner was charged with Kidnapping in the Second Degree, Grand Larceny in the Fourth Degree, Assault in the Second Degree, and Aggravated Harassment in the Second Degree. During the jury selection, the Honorable Gary Weber excused prospective jurors who had reason to leave without individually questioning them. Although Petitioner did not object to Judge Weber's procedure, Petitioner objected later in the afternoon because there were no African-Americans left in the panel (T. 19, 100). Judge Weber denied Petitioner's objection (T. 102).

On May 24, 2000, a jury found Petitioner guilty of Kidnapping in the Second Degree, Grand Larceny in the Fourth Degree, and Assault in the Second Degree. On June 23, 2000, Petitioner was sentenced to consecutive terms of twenty-five years of incarceration on count one, 3 1/2 to 7 years incarceration on count two, and seven years on count three.

On appeal, Petitioner argued that (1) the evidence at trial was insufficient to support the jury's verdict on the kidnapping and assault convictions; (2) the jury selection process was improper, and (3) Petitioner's sentence was harsh and excessive and the sentence for the Grand Larceny count was improper. On March 8, 2004, the Appellate Division, Second Department modified Petitioner's sentence; the court vacated Petitioner's sentence on the conviction of grand larceny in the fourth degree and held that

Petitioner's sentences on the convictions of kidnapping in the second degree and assault in the second degree should run concurrently. The Appellate Division denied the remainder of Petitioner's arguments, finding that they "[were] not properly preserved for appellate review and, in any event, [were] without merit." People v. Williams, 5 A.D.3d 514, 515 (N.Y. App. Div. 2d Dep't 2004). The Court of Appeals for the State of New York denied Petitioner's request for leave to appeal. People v. Williams, 2 N.Y.3d 809, 814 N.E.2d 480, 781 N.Y.S.2d 308 (2004).

Thereafter, Petitioner filed a writ of error coram nobis claiming ineffective assistance of appellate counsel. On November 28, 2005, the Appellate Division held that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel." People v. Williams, 23 A.D.3d 681, 682 (N.Y. App. Div. 2d Dep't 2005). The Court of Appeals denied Petitioner's application for leave to appeal. People v. Williams, 6 N.Y.3d 820, 845 N.E.2d 1290, 812 N.Y.S.2d 459 (2006).

On August 29, 2005, Petitioner filed a petition for a writ of habeas corpus raising the following nine claims: (1) there was insufficient evidence to support Petitioner's convictions for kidnapping and (2) assault; (3) Petitioner was denied his right to a jury from a fair cross-section of the community; (4) the trial court's sentence was a "punishment" for Petitioner's exercise of his right to a jury trial; (5) Petitioner received ineffective

assistance of trial counsel; (6) Petitioner's constitutional rights were violated by prosecutorial misconduct and (7) judicial misconduct; (8) Petitioner is actually innocent; and (9) Petitioner received ineffective assistance of appellate counsel.

## DISCUSSION

I. Federal Habeas Review of State Convictions

Section 2254 provides that a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "A state court 'adjudicates' a petitioner's federal constitutional claims 'on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002) (quoting Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005) (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)). A decision is "contrary to" established

federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially distinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." Penry v. Johnson, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) (citing Williams v. Taylor, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. (citing Williams, 529 U.S. at 407-08). Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." Williams, 529 U.S. at 411.

II. Petitioner's Claims

    A. Petitioner's First Four Claims are Procedurally Defaulted

        Petitioner claims that there was insufficient evidence at his trial to support his convictions for kidnapping and assault, the trial court denied Petitioner's right to a jury from a fair cross-section of the community, and the trial court's sentence was a "punishment" for Petitioner's exercise of his right to a jury trial. Petitioner raised these same claims on appeal, in addition

8

to arguing that the trial court's sentence for Petitioner's grand larceny conviction was incorrect. The first four claims presented in Petitioner's habeas application were rejected by the Appellate Division as unpreserved and otherwise without merit. Because the state court rejected Petitioner's arguments on an independent and adequate state ground, this Court is precluded from reviewing Petitioner's first four claims.

"A federal court may not review a state prisoner's federal claims if the claims were denied in state court pursuant to an independent and adequate state procedural rule." Escalona v. Sears, No. 06-CV-6769, 2008 U.S. Dist. LEXIS 79529, at *23 (E.D.N.Y. Oct. 8, 2008); see also Whaley v. Graham, No. 06-CV-3843, 2008 U.S. Dist. LEXIS 82987, at *21 (E.D.N.Y. Oct. 15, 2008) (holding that the petitioner's claims were procedurally barred from federal habeas review because "in disposing of petitioner's claims, the Appellate Division provided a plain statement that the two claims in this petition were unpreserved for appellate review under established New York law."). The state court's "reliance on state law must be 'clear from the face of the opinion.'" Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (quoting Coleman v. Thompson, 501 U.S. 722, 732, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).

Here, although the state court addressed the merit of Petitioner's claim that his sentence for the grand larceny

conviction was incorrect, the state court held that Petitioner's "remaining contentions [were] not properly preserved for appellate review. . . ." People v. Williams, 5 A.D.3d 514, 515 (N.Y. App. Div. 2d Dep't 2004). Although the state court went on to state, "[i]n any event," Petitioner's arguments were without merit, this alternative holding does not open the door for federal court review. "[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005).

Petitioner erroneously relies on Reid v. Senkowski, 961 F.2d 374 (2d Cir. 1992), to support his argument that the claims are preserved. In Reid, the Second Circuit evaluated a state court's holding that the petitioner's claims "were either unpreserved for appellate review or without merit." Id. at 377. It is undisputed that "if the state court holds that a claim is either unpreserved for appellate review or without merit, the claim is deemed preserved and therefore subject to habeas review." Battle v. Artus, 2009 U.S. Dist. LEXIS 89418, 19-20 (E.D.N.Y. Sept. 28, 2009) (emphasis added) (citing Fama v. Comm. of Corr. Servs., 235 F.3d 804, 810-811 (2d Cir. 2000). However, that is not the situation here. The state court reviewing Petitioner's claims found that the claims were unpreserved, and in any event, without merit. "A state court's holding that a claim is unpreserved and

10

without merit constitutes reliance on an independent state law ground." Cherry v. Walsh, No. 09-CV-1452, 2009 U.S. Dist. LEXIS 75373, at *28 (E.D.N.Y. Aug. 25, 2009).

Because the Appellate Court rested its decision on an adequate and independent state ground, the Court cannot review Petitioner's first four claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 749-750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); see also Fama, 235 F.3d at 809. Because Petitioner fails to satisfy either of the two Coleman standards, the Court dismisses Petitioner's first four claims.

B.  Petitioner Received Effective Assistance of Counsel

In order to prevail on a claim of ineffective assistance of counsel, Petitioner "must show both that his counsel acted 'outside the wide range of professionally competent assistance,' and that the deficiencies is his counsel's performance were prejudicial to his defense." Jameson v. Coughlin, No. 93-CV-2525, 1994 WL 131185, at *2 (2d Cir. 1994) (quoting Strickland v. Washington, 466 U.S. 668, 690, 691-92, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). This two-prong standard of review applies not only to a criminal defendant's trial counsel, but also to his appellate counsel on direct appeal. See Evitts v. Lucey, 469 U.S. 387, 396,

11

105 S. Ct. 830, 836, 83 L. Ed. 2d 821 (1985); <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994); <u>Abdurrahman v. Henderson</u>, 897 F.2d 71, 74 (2d Cir. 1990).

In evaluating whether an attorney's representation has fallen "below an objective standard of reasonableness," <u>Strickland</u>, 466 U.S. at 688, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. "Counsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." <u>Id.</u> at 691. In evaluating the reasonableness of counsel's decisions, however, "a heavy measure of deference [is accorded] to counsel's judgments." <u>Id.</u> In addition, "there is no constitutional right 'to have appellate counsel raise every nonfrivolous issue that the defendant requests.'" <u>Jameson</u>, 1994 WL 131185, at *3 (quoting <u>Jones v. Barnes</u>, 463 U.S. 745, 754 n.7, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)).

The second prong of the Strickland test requires that any deficiencies in counsel's performance be prejudicial to the defense. <u>See</u> <u>Strickland</u>, 466 U.S. at 692. While a finding of prejudice is not dependent upon a showing "that counsel's deficient conduct more likely than not altered the outcome in the case," <u>id.</u> at 693, the claimant nevertheless must establish "that there is a reasonable probability that, but for counsel's unprofessional

12

errors, the result of the proceeding would have been different." Id. at 694.

It is well established that counsel need not raise every nonfrivolous issue on appeal simply because a client suggests it "if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1982). See also Abdurrahman, 897 F.2d at 74. Further, there is a strong presumption that counsel used reasonable professional judgment and conducted himself accordingly. See Clark v. Stinson, 214 F.3d 315, 321 (2d Cir. 2000) (quoting Strickland, 466 U.S. at 689). Thus, to show that counsel's performance fell below the applicable standard and was deficient for failure to raise an argument on appeal, a petitioner would have to show that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark, 214 F.3d at 322.

Petitioner raises several arguments in support of his claim that he received ineffective assistance of counsel. According to Petitioner, "trial counsel failed to investigate, failed in his bias questioning, was not truthful when telling the jurors that they would hear important witnesses, counsel did not properly communicate with his client, counsel used numerous prejudicial remarks and statements when referring to his client in his summary, failed to object properly and in debriefing the

13

prosecution."  Pet.'s Traverse 4, 5.

Petitioner's claim that counsel was ineffective by failing to communicate with Petitioner is without merit.  According to Petitioner, counsel only visited Petitioner once.  However, Petitioner has not "explain[ed] why more frequent visits were required, or how his defense would have been different with additional communication."  Mulosmanaj v. Mazzuca, No. 06-CV-13515, 2007 U.S. Dist. LEXIS 69193, at *8 (S.D.N.Y. Sept. 18, 2007).

Petitioner's claim that counsel was ineffective for failing "to investigate" is equally without merit.  It is unclear what Petitioner claims counsel failed to investigate.  To the extent that Petitioner claims counsel failed to investigate the case properly by not knowing where a potential witness, Clara Russel resided, the Court finds that counsel's failure to know this fact did not rise to the level of ineffective assistance of counsel.

Likewise, Petitioner's remaining claims with respect to counsel's choice of language and the witnesses counsel called are nothing more than minor disagreements with counsel's trial tactics. The Court finds that "[a]t most, these alleged errors were minor mistakes, strategic errors, or tactical errors."  Federal habeas corpus relief will not be granted upon such a showing.  Baker v. Henderson, No. 85-CV-3969, 1987 U.S. Dist. LEXIS 6742, at *5, 6 (S.D.N.Y. July 28, 1987).

14

The Court rejects Petitioner's argument that counsel used prejudicial remarks in his closing. Petitioner maintains that counsel improperly stated to the jury:

> Grand larceny, remaining charge that you have to consider. There is some testimony that he owned the chain, that she owned the chain. She was wearing the chain. But the most important testimony about this chain is he pulled it off her neck. You can look at the chain. The clasp is broke. Okay he did pull it off her neck.

However, Petitioner fails to address the remainder of counsel's closing, wherein counsel states, "But what does she tell you? I said he can have it. I said he can have it." Tr. 1164-1165. This next statement undermines Petitioner's argument that counsel admitted Petitioner's guilt with respect to the grand larceny charge; rather, it is clear to the Court that counsel attempted to argue that Ms. Winfield gave Petitioner the necklace, thus negating the larceny charge.

Finally, the Court finds that Petitioner has not shown that counsel had a conflict of interest. In sum, after reviewing Petitioner's detailed arguments in support of his ineffective assistance of counsel claim, the Court finds that Petitioner received effective assistance.

C. <u>Petitioner Received Effective Assistance of Appellate Counsel</u>

Petitioner maintains that appellate counsel "sought and raised issues which were weaker by far." Pet. pg. 3. Although

"appellate counsel's performance may be found constitutionally inadequate upon demonstration that significant and obvious issues were ignored while weaker arguments were pursued," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), Petitioner has not made a showing that appellate counsel pursued "weaker" arguments. The Court has reviewed appellate counsel's brief and finds that counsel made detailed and intelligent arguments. Counsel is not required to raise every non-frivolous issue on appeal. See Jones v. Barnes, 463 U.S. 745, 750-54, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of rigorous and effective advocacy . . . .").

Additionally, the Court rejects Petitioner's claim that appellate counsel was ineffective for failing to raise Petitioner's ineffective assistance of trial counsel claim. The Court has already found that Petitioner's ineffective assistance of trial counsel claim is without merit. "Because trial counsel cannot be deemed ineffective, appellate counsel could not be deemed ineffective for failing to raise this claim on direct appeal." Jelinek v. Costello, 247 F. Supp. 2d 212, 290 (E.D.N.Y. 2003)

D. *Judicial and Prosecutorial Misconduct*

"To establish that a judge has engaged in misconduct sufficient to warrant habeas relief, petitioner must show that the

judge demonstrated 'such a high degree of favoritism or antagonism as to make fair judgment impossible.'" Wright v. Conway, No. 09-CV-2967, 2009 U.S. Dist. LEXIS 94638, at *37 (E.D.N.Y. Oct. 9, 2009) (quoting Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)). Petitioner fails to make such a showing. Petitioner has failed to show that "Judge Weber intentionally and maliciously abused his authority and position by testifying falsely."

The Court rejects Petitioner's claim that he did not receive a fair trial because Judge Weber was hostile towards Petitioner's counsel. District courts should reverse convictions based on a trial judge's denigration of an attorney only if "the judge's behavior was so prejudicial that it denied [the petitioner] a fair, as opposed to a perfect, trial." United States v. Amiel, 95 F.3d 135, 146 (2d Cir. 1996) (internal quotation marks and citation omitted). The Court has reviewed the record and finds that Petitioner received a fair and adequate trial, and that Judge Weber absolutely did not demonstrate "such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky, 510 U.S. at 555.

The Court also rejects Petitioner's claim of prosecutorial misconduct. "To determine whether a prosecutor deprived a petitioner of a fair trial, a court must consider (1) the severity of the misconduct; (2) the measures adopted by the

17

trial court to cure the misconduct; and (3) the certainty of a conviction absent the misconduct." Wright v. Rivera, No. 06-CV-1725, 2008 U.S. Dist. LEXIS 91769, at *38 (E.D.N.Y. Sept. 10, 2008) (citing Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994)).

Petitioner argues that the prosecutor improperly raised a "prior bad act" by attempting to admit into evidence a photograph of the victim with a black-eye. However, the Court has reviewed the transcript and finds that the prosecutor attempted to introduce this photograph in response to the defense counsel's portrayal of a happy relationship between Petitioner and the victim. Defense counsel objected, and in response, the trial court ruled that the jury would not be permitted to view the photograph. The trial court's ruling more than adequately cured any alleged misconduct. In any event, there was overwhelming evidence of Petitioner's guilt, including the victim's testimony and the items recovered by the police from Petitioner's car. Petitioner clearly would have received a conviction notwithstanding the prosecutor's attempted introduction of an allegedly prejudicial photo.

E. Actual Innocence

"'To be credible,' an actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.'" Foster v. Phillips,

326 Fed. Appx. 597, 598 (2d Cir. N.Y. 2009) (quoting Schlup v. Delo, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

Petitioner briefly mentions that he was actually innocent and the charges were "created to get appellant to assist in helping the DEA catch one of the FBI's most wanted." Pet. pg. 2. The Court finds that Petitioner's claims are absolutely incredible and without merit. Petitioner has not alleged any credible facts supporting a claim of actual innocence.

Accordingly, the Court finds that Petitioner is not entitled to a writ of habeas corpus.

IV. A Certificate of Appealability is Denied

The Court will not issue a certificate of appealability in this case. Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C § 2253. The issues involved in this case are not debatable among reasonable jurors, a court could not resolve the issues in a different manner, and the questions involved do not deserve encouragement to proceed further. See Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's writ of habeas corpus in its entirety. The Court will not issue a certificate of appealability. The Clerk of the Court is directed to mark this matter as CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   Central Islip, New York
         November   17  , 2009